# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| JAMIE L. THOMPSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:23-CV-149 PLC |
| | ) |
| MARTIN O'MALLEY,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Plaintiff Jamie Thompson seeks review of the decision of Defendant Social Security Commissioner Martin O'Malley denying her application for Disability Insurance Benefits (DIB) under the Social Security Act. For the reasons set forth below, the Court affirms the Commissioner's decision.

**I.      Background and Procedural History**

On August 12, 2020, Plaintiff, who was born in September 1974, filed an application for DIB, alleging she was disabled as of January 1, 2019, as a result of neuropathy in left leg, high blood pressure, "back problems," depression, and "back locks up." (Tr. 77, 86, 206-212) The Social Security Administration (SSA) denied Plaintiff's claim. (Tr. 77-84) Plaintiff filed a request for reconsideration. (Tr. 102) The SSA denied Plaintiff's claim on reconsideration and Plaintiff timely requested a hearing before an administrative law judge (ALJ). (Tr. 86-91, 113-114) The SSA granted Plaintiff's request for review and conducted a hearing on November 22, 2021. (Tr.

---

[1] Martin O'Malley became the Commission of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of 205(g) of the Social Security Act, 42 U.S.C. §405(g).

36-75) On January 7, 2022, the ALJ issued a decision finding Plaintiff not disabled. (Tr. 12-35) Plaintiff filed a request for review of the ALJ's decision with the SSA Appeals Council, which denied review. (Tr. 1-6, 204)  Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the Commissioner's final decision.  Sims v. Apfel, 530 U.S. 103, 106-07 (2000).

II.     **Evidence Before the ALJ**

A.  Plaintiff's Testimony

On December 2, 2014, Plaintiff sustained a back injury while at work. (Tr. 45) In February 2016, Plaintiff underwent spinal fusion surgery to repair a central disc herniation at L5-S1. (Tr. 60, 1304) Plaintiff continues to have low back pain, upper back pain, and neuropathy in both legs. (Tr. 51)  Because the neuropathy is "worse" in her left leg, Plaintiff "overcompensates" while walking which causes pain in her right hip. (Tr. 51) Plaintiff began receiving steroid injections for leg pain in 2017. (Tr. 60)  Plaintiff's left leg "locks up" or gives out at least once or twice a week which causes her to fall. (Tr. 52, 54, 56) In June 2017, she broke her left ankle in a fall after her leg locked up. (Tr. 55, 60) Plaintiff's ankle is still painful but she is currently "opting out" of having the ankle surgically repaired. (Tr. 56)

In January 2018, a permanent spine cord stimulator (SCS) was implanted, followed by replacement of SCS in September 2018 after stimulator leads from the first SCS migrated. (Tr. 60-61, 443-444)  Plaintiff's upper back pain began after the SCSs were installed. (Tr. 51, 56) Plaintiff testified that the pain is "always there. It's consistent. It aches. It shoots out." (Tr. 51) The pain causes her to "throw up a lot" and prevents her from sleeping. (Tr. 51)  Plaintiff's upper back pain causes weakness in her hands, which leads her to drop "a lot of things." (Tr. 57)

Plaintiff gets steroid injections every three months for her upper back pain. (Tr. 51, 53-54, 57) The steroid injections alleviate her pain "for the most part" but the pain relief "starts going

downhill" after two months. (Tr. 57) Plaintiff also takes diazepam for pain and amlodipine for high blood pressure. (Tr. 51, 53-54, 57) The diazepam makes her drowsy and causes a "little" dizziness. (Tr. 54)

Plaintiff is able to walk for 5 to 10 minutes; stand for 10 minutes; and sit for 10 to 15 minutes. (Tr. 46, 52) Plaintiff has her driver's license and drives for 20 minutes twice a week. (Tr. 45-46) Plaintiff can drive for up to an hour but "need[s] to get out, stretch, walk around, move because sitting too long is just too much." (Tr. 46) Plaintiff is unable to stoop, crouch, crawl, squat, bend or balance. (Tr. 61- 62) Plaintiff has no issues with reaching. (Tr. 62) Plaintiff can "probably" lift a gallon of milk. (Tr. 52)

Plaintiff testified that she adjusts her position "all the time[,]" stating "I walk, I stand, and I sit. It's like a non-stop thing." (Tr. 52, 58-59) Plaintiff is able to stand for 5 to 10 minutes while doing the dishes and, if need be, will finish the dishes while sitting in a chair. (Tr. 54, 59) Plaintiff does not do any other household chores and relies upon her mother to help her. (Tr. 51, 54) Plaintiff is not able to "do a lot" or able to "perform a whole lot of everyday activities" because she is "constantly in pain." (Tr. 51, 54) Plaintiff is able to shower and, in a typical day, will prepare her food and "try to watch a movie." (Tr. 51, 53) Plaintiff spends 6 hours watching a 2-hour movie because she has to "get up and down and move" or will lay down or try to take a nap. (Tr. 53) Attending doctor's appointments causes additional pain, and Plaintiff rests the day of an appointment and is unable to "go anywhere" the following day due to pain. (Tr. 59-60) Plaintiff completed the ninth grade and has not obtained her GED. (Tr. 46) Since 2016, Plaintiff worked in multi-level marketing but "never made any money." (Tr. 46)

    B. <u>Function Report</u>

3

In a September 2020 function report, Plaintiff reported living alone and having no difficulties attending to her personal care. (Tr. 251, 257) Plaintiff cooks her own meals, spending 5 to 10 minutes a day preparing either frozen meals or using her crockpot. (Tr. 258) Plaintiff cleans the dishes and does laundry. (Tr. 258) Plaintiff cleans "what [she] can" but her mother and friends complete the cleaning she is unable to do. (Tr. 258) Plaintiff feeds her cat but her mother cleans the litter box. (Tr. 257) In a typical day, Plaintiff either goes to the doctor or is "at home doing nothing" due to continuous pain. (Tr. 257) Plaintiff reads and watches television every day. (Tr. 260) Plaintiff sleeps 4 hours most nights but "sometimes" does not sleep at all. (Tr. 257) Plaintiff goes outside daily and can walk, drive, and ride in the car. (Tr. 259) Plaintiff shops for her food once a week "with help." (Tr. 259) Plaintiff can pay bills, count change, handle her savings account, and use a checkbook. (Tr. 259) Plaintiff goes to the doctor twice a week. (Tr. 260)

Plaintiff reports that her condition impacts her ability to lift, squat, bend, stand, reach, walk, sit, kneel, and climb stairs as well as her memory and her ability to complete tasks. (Tr. 261) Plaintiff can "stand about 10 [minutes,] then sit, then walk for 10 [minutes] at a time." (Tr. 261) Plaintiff can walk for 10 minutes before resting for 10 minutes. (Tr. 261) Plaintiff can pay attention for 15 minutes at a time and follow written and verbal instructions. (Tr. 261) Plaintiff takes diazepam, which causes her to be tired. (Tr. 263)

C. <u>Vocational Expert's Testimony</u>

Vocational expert Delores Gonzalez also testified at the hearing. (Tr. 64). The ALJ asked Ms. Gonzalez to consider a hypothetical individual with Plaintiff's age, education, and work experience who could work with the following limitations: lift up to 10 pounds occasionally; stand or walk for two hours and sit for six hours in an eight-hour workday with normal breaks;

4

occasionally climb ramps or stairs but never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, and crouch; never crawl; and avoid exposure to excessive vibration, concentrated exposure to operational control of moving machinery, unprotected heights, and hazardous machinery. (Tr. 67)  Ms. Gonzalez testified this would be classified as sedentary work and that Plaintiff's past work as a fast-food service manager trainee and ice cream dispenser would be eliminated but that Plaintiff could perform unskilled sedentary jobs such as addresser, document preparer, and tube operator. (Tr. 67-68)

Ms. Gonzalez testified an employee can be off-task between zero and ten percent of the workday and maintain competitive employment. (Tr. 68-69) Employers "usually" tolerate 10 to 12 absences a year. (Tr. 70) Ms. Gonzalez stated that the hypothetical individual could alternative between sitting, standing, and walking at the employee's discretion so long as they are on-task. (Tr. 69)  In response to a question from Plaintiff's counsel, Ms. Gonzalez testified she "believed" it was possible for someone to perform the listed positions while alternating between sitting, standing, and walking but that "it depends on the job site." (Tr. 71) Ms. Gonzalez further testified that the listed jobs "can be performed lifting less than 10 pounds[.]" (Tr. 71)

### D. Medical Records

In regard to Plaintiff's medical records, the Court adopts the facts that the Commissioner admitted and that Plaintiff set forth in her statement of material facts. [ECF Nos. 28, 29-1] The Court also adopts the additional facts contained in the Commissioner's response to Plaintiff's statement of material facts because Plaintiff did not contest them.[2] [ECF Nos. 29-1]

### III.    Standards for Determining Disability Under the Social Security Act

---

[2] Relevant medical records are discussed in detail below.

Eligibility for disability benefits under the Social Security Act ("Act") requires a claimant to demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); see also 20 C.F.R. § 404.1505(a). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the ALJ engages in a five-step evaluation process. See 20 C.F.R. § 404.1520(a).  Those steps require a claimant to first show that he or she is not engaged in substantial gainful activity.  Id.  Second, the claimant must establish that he or she has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(a), (c).  "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [the claimant's] ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001)). At step three, the ALJ considers whether the claimant's impairment meets or equals an impairment listed in 20 C.F.R., Pt. 404, Subpart P, Appendix 1.  20 C.F.R. § 404.1520(a), (d). If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 404.1520(d)

6

Prior to step four, the Commissioner must assess the claimant's residual functional capacity (RFC), which is "the most a claimant can do despite [his or her] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); 20 C.F.R. § 404.1520(a), (e). RFC is "based on all relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations." Id. (quoting Lacroix v. Barnhart, 465 F.3d 881, 887 (8th Cir. 2006)).

At step four, the ALJ determines whether the claimant can return to his or her past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(a), (f); see McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, the claimant will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. McCoy, 648 F.3d at 611.

Through step four, the burden remains with the claimant to prove that he or she is disabled. Moore, 572 F.3d at 523. At step five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. 20 C.F.R §§ 404.1520(a), (g); 404.1560 (c); Brock v. Astrue, 674 F.3d 1062, 1064 (8th Cir. 2012). If the claimant cannot make an adjustment to other work, then he or she will be found to be disabled. 20 C.F.R. § 404.1520(g).

## IV.     ALJ's Decision

Applying the five-step evaluation process, the ALJ found Plaintiff: (1) had not engaged in substantial gainful activity from January 1, 2019, the alleged onset date, through June 30, 2020, the date last insured; and (2) had the severe impairments of post-laminectomy syndrome, degenerative disc disease of the lumbar spine, and left ankle peroneal tendinitis. (Tr. 18)  At step

7

three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr.  18-19)

The ALJ determined Plaintiff had the RFC to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except lift/carry up to 10 pounds occasionally. She can stand/walk for two hours and sit for up to six hours in an eight-hour work day, with normal breaks. She can occasionally climb ramps or stairs, but never climb ladders, ropes or scaffolds. She can occasionally balance, stoop, kneel, and crouch, but never crawl. She should avoid exposure to excessive vibration. She should void concentrated exposure to operational control of moving machinery. She should avoid unprotected heights and exposure to hazardous machinery.

(Tr.  19)

In making this assessment, the ALJ considered Plaintiff's reported conditions and symptoms, and found Plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms but that her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr.  19-20)  In support, the ALJ detailed Plaintiff's medical records, including her reported activities, improvement with treatment, and failure to follow medical advice. (Tr.  19-28)  The ALJ also considered the medical opinions and other evidence of record and concluded Plaintiff's severe impairments limited her to sedentary work with additional exertional and non-exertional limitations. (Tr.  19-28)

Based on the vocational expert's testimony, the ALJ found Plaintiff was unable to perform any past relevant work. (Tr.  28) However, based on the  RFC, Plaintiff's age, education, and prior work experience, and the vocational expert's testimony, the ALJ concluded Plaintiff was able to perform other jobs that existed in significant numbers in the national economy, such as addresser,

document preparer, tube operator. (Tr. 29)  The ALJ therefore determined Plaintiff was not disabled. (Tr. 30)

V. **Discussion**

Plaintiff argues the ALJ decision is not supported by substantial evidence because he erred in evaluating the medical opinion evidence. [ECF No. 27]  Specifically, Plaintiff contends the ALJ erred in discounting the medical opinions of Michael Thompson, DC; David Raskas, M.D.; and Barry Feinberg, M.D. because their opinions were supported by and consistent with the medical evidence and Plaintiff's reports of pain and physical limitations. [ECF No. 27] The Commissioner counters that the ALJ did not err in finding the medical opinions stating Plaintiff was disabled or unable to work were issues reserved to the Commissioner and that the opinions reiterating Plaintiff's subjective complaints were unpersuasive as inconsistent with the medical and nonmedical evidence. [ECF No. 29]

   A. Standard of Judicial Review

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g).  "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Chesser v. Berryhill, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)). A court must consider "both evidence that supports and evidence that detracts from the ALJ's determination, [but it] may not reverse the Commissioner's decision merely because substantial evidence supports a contrary outcome."  Id. (quoting Prosch, 201 F.3d at 1012) (internal quotation marks omitted).

A court does not "reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are

9

supported by good reasons and substantial evidence." Renstrom v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006)). Therefore, a court must affirm the ALJ's decision if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings[.]" Wright v. Colvin, 789 F.3d 847, 852 (8th Cir. 2015) (quoting Perkins v. Astrue, 648 F.3d 892, 897 (8th Cir. 2011)).

For claims filed on or after March 27, 2017, such as Plaintiff's claim, the ALJ evaluates medical opinions and prior administrative medical findings under 20 C.F.R. §§404.1520c, 416.920c. The regulations provides that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c (a), 416.920c (a). Rather, the ALJ will consider all medical opinions according to several enumerated factors: (1) supportability; (2) consistency; (3) relationship with the claimant, which includes the length of treatment relationship, the frequency of examinations, the purpose of the treatment, the extent of treatment, and the examining relationship; (4) the medical source's specialization; and (5) other relevant factors such as the medical source's familiarity with the other evidence and the source's understanding of the SSA's policies and evidentiary requirements. 20 C.F.R. §§ 404.1520c (a), (c); 416.920c (a), (c).

The ALJ must articulate in his determination how persuasive he finds all of the medical opinions and prior administrative medical findings in the case record. 20 C.F.R. §§ 404.1520c (b), 416.920c (b). The most important factors are supportability and consistency, and the ALJ must explain in his determination how he considered these factors for each medical source's medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c (a), (b)(2); 416.920c (a), (b)(2). Dornbach v. Saul, 4:20-CV-36 RLW, 2021 WL 1123573, at *4 (E.D. Mo. Mar. 24, 2021).

Generally, the ALJ is not required to explain his consideration of the remaining factors.[3] 20 C.F.R. §§ 404.1520c (b)(2); 416.920c (b)(c); Martini v. Kijakazi, 4:20-CV-1711-CDP, 2022 WL 705528, at * 4 (E.D. Mo. Mar. 9, 2022).

For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical findings will be." 20 C.F.R. §§ 404.1520c (c)(1); 416.920c (c)(1). Thus, supportability is an assessment of how well a medical source supported and explained his or her opinion. Daniels v. Kijakazi, No. 21 Civ. 712 (GWG), 2022 WL 2919747, at *5, (S.D. N.Y. July 26, 2022). The ALJ may consider whether the physician's own treatment notes support the physician's opinion. Starman, 2021 WL 4459729, at *4.

The regulations provide that "consistency" means "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c (c)(2); 416.920c (c)(2). "Thus, '[c]onsistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record, not just what a medical source had available to them.'" Daniels, 2022 WL 2919747, at *5 (quoting Cuevas v. Comm'r of Soc. Sec., 2021 WL 363682, at *10 (S.D. N.Y. Jan. 29, 2021).

B. Medical Opinion Evidence

    a. Michael Thompson, DC

---

[3] The ALJ must articulate his consideration of the remaining factors when two or more medical opinions or prior administrative medical findings about the same issue are not exactly the same and both opinions are equally well supported and consistent with the record. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c (b)(2).

Dr. Thompson, Plaintiff's treating chiropractor between November 2018 and November 2021, submitted a checklist medical source form dated October 22, 2021, opining Plaintiff could lift or carry less than 10 pounds, stand and sit less than 10 minutes, walk less than 20 minutes, and had to change positions every 10 to 15 minutes due to pain.  (Tr.  1294) Dr. Thompson stated Plaintiff could never climb ramps, ladders, ropes and scaffolds; balance; kneel; crouch; crawl; stoop; and reach and could occasionally grasp, grip, finger, feel, and handle. (Tr.  1294) Dr. Thompson explained that these limitations were supported by Plaintiff's "lumbar disc herniation with fusion, spinal cord stimulator with paddle surgery[,]" and "permanent nerve damage" resulting from the lumbar disc herniation. (Tr.  1294-95)

Dr. Thompson included a narrative explanation setting forth Plaintiff's subjective complaints of pain and physical limitations including her reported inability to stand more than 10 to 15 minutes or to walk more than "short bouts." (Tr.  1296-1297) Dr. Thompson opined Plaintiff had "several limitations due to the nature of her injuries and subsequent surgeries" and stated he "witnessed" over the course of her treatment "her physical responses when she tried to walk for more than 20 minutes, [or] stand[] or sit more than 20 minutes and how these activities impact her physically and also emotionally[,]"as well has Plaintiff's need to frequently change positions due to pain. (Tr.  1297). Dr. Thompson stated Plaintiff should "not return to work and be granted permanent disability[.]" (Tr.  1297)

The ALJ concluded that Dr. Thompson's opinion regarding Plaintiff's exertional and functional limitations was not persuasive because the limitations appeared to be based on Plaintiff's subjective complaints, were inconsistent with the objective medical evidence, and were not supported by Dr. Thompson's contemporaneous office notes. (Tr.  28) The ALJ found that Dr. Thompson's opinion that Plaintiff "should not return to work and be granted permanent disability"

unpersuasive because "the finding of disability and ability to work" are issues reserved to the Commissioner. (Tr. 28)

Plaintiff argues the ALJ erred in finding Dr. Thompson's opinion regarding Plaintiff's functional limitations to be unpersuasive because Dr. Thompson's opinion was:  (1) consistent with objective medical evidence demonstrating Plaintiff's lumbar disk herniation and her extensive treatment for this condition including back surgery, implantation of a SCS, multiple rounds of steroid injections, and twice weekly chiropractic therapy; and (2) supported by Dr. Thompson's contemporaneous office or progress notes. [ECF No. 27] Plaintiff also contends the ALJ failed to "recognize or evaluate Dr. Thompson's narrative explanations to support his opinions[.]" [ECF No. 27] The Commissioner argues the ALJ properly found that Dr. Thompson relied heavily on Plaintiff's subjective reports and that his limitations lacked support by contemporaneous progress notes and were inconsistent with the object medical evidence. [ECF No. 29]

Dr. Thompson asserted that the functional limitations he provided were supported by "clinical or laboratory tests," including Plaintiff's "lumbar disc herniation with fusion, spinal cord stimulator with paddle surgery[,]" and "permanent nerve damage" resulting from the lumbar disc herniation.  (Tr.  1294-95) However, Dr. Thompson's narrative explanation accompanying the checklist opinion primarily relies upon Plaintiff's self-reported complaints of pain and limitations instead of clinical or laboratory testing. (Tr.  1296-1297) Contrary to Plaintiff's assertion, the ALJ considered Dr. Thompson's narrative explanation, specifically noting that Dr. Thompson's narrative relied upon Plaintiff's "complaints rather than objective findings" and that Dr. Thompson "seemed to uncritically accept as true most, if not all, of what the claimant reported." (Tr.  28)

While Plaintiff is correct that the medical evidence demonstrates that Plaintiff suffered from a lumbar disc herniation and received numerous treatments for her condition, including

13

surgery, implantation of two SCSs, steroid injections, and regular chiropractic therapy, this evidence alone does not necessitate a finding of disability. Here, Dr. Thompson's functional limitations rely upon Plaintiff's self-reported limitations and those alleged limitations are inconsistent with additional evidence of record, including Plaintiff's lack of adherence to some medical treatment advice, her reported improvement with treatment, and her inconsistent reports of physical activity.

Plaintiff's medical providers routinely observed that she walked with a normal or non-antalgic gait (Tr. 334, 361, 579, 603, 611, 807, 867, 889) and sat comfortably in a chair (Tr. 583, 588, 593, 599, 862, 874, 879, 884). Plaintiff exercised by walking (Tr. 333, 344, 346, 370, 393, 396, 400, 1062, 1063,1156, 1161, 1165) and going to the gym (Tr. 1111, 1134, 1135, 1136, 1156, 1157, 1170). Dr. Thompson's progress notes reflect reports of Plaintiff walking 30 to 45 minutes at a time and for distances of up to 4 miles a day. (Tr. 1075, 1163, 1164, 1166, 1169) Although Dr. Thompson stated Plaintiff could stand for less than 10 minutes, Dr. Thompson's progress reports note multiple instances of Plaintiff exceeding this limitation, including her once standing approximately 17 hours over a weekend while baking. (Tr. 1180, 1203, 1221). Dr. Thompson's progress notes also reflect that Plaintiff reported sitting for periods up to several hours while at baseball games, traveling, or while working on her computer. (Tr. 1037, 1054, 1183, 1184, 1186, 1194, 1223, 1226, 1235, 1244, 1245, 1252) This includes one weekend in which Plaintiff reportedly spent 26 hours on her computer while working over the weekend. (Tr. 1186)

The record also demonstrates that Plaintiff was noncompliant with medical advice, choosing to disable her SCS rather than seek adjustments. While Plaintiff maintains the SCS did not provide any relief, the medical records demonstrate that her reports of relief are inconsistent, at times reporting relief from the SCS and other times reporting no relief, and that her physician

14

advised her to have the unit "interrogated" to maximize the benefits of the machine.[4] (Tr. 399, 489, 579, 583, 588,  593, 598, 599, 603, 607, 615, 624, 867, 884,  889,  1124, 1126, 1230,  1246, 1277, 1278)

Further, Plaintiff reported improvement of her condition from some treatment, reporting significant improvement in her lower back pain after the 2016 surgery (Tr. 346, 358, 370) and between 30% to 90% improvement from the lumbar and thoracic steroid injections, with improvement lasting between three and four months. (Tr.  579, 581, 583, 586, 597,  607, 622, 626, 631, 634, 639, 860, 862, 867, 872, 874, 882, 889, 891, 893) Over time, Plaintiff successfully weaned herself off most of her pain medications, although she continued to take Diazepam which helped her sleep. (Tr. 579, 867,  889)

Based on the record, the Court finds the ALJ properly considered the statutory factors in evaluating the persuasiveness of Dr. Thompson's opinion and that the ALJ's determination that Dr. Thompson's opinion was unsupported by his contemporaneous office notes and inconsistent with the other evidence in the record is supported by substantial evidence.

    b.  <u>Dr. Raskas</u>

In an April 24, 2019 report, Dr. Raskas[5] provided answers to written inquires posed by Plaintiff's counsel regarding Plaintiff's medical treatment related to her December 2014 work injury. (Tr.  381-384) Dr. Raskas opined that Plaintiff reached maximum medical improvement and that "[t]he treatments that she will be getting going forward are maintenance to keep her

---

[4] In February 2019, Tong Zhu, M.D., the surgeon who implanted Plaintiff first SCS, advised Plaintiff that her she needed SCS interrogation to maximize the benefit of the unit and noted that "at this point it is hard to say if she failed SCS or not, as she is using it on and off[.]" (Tr.  599)

[5] Dr. Raskas, an orthopedic surgeon, was one of Plaintiff's treating physicians and performed her 2016 spinal fusion. (Tr.  332-340, 341-795, 1304-1305)

15

functioning within the realm of her own activities of daily living" and that Plaintiff was "permanently and totally disabled and not capable of working[.]" (Tr. 384)

The ALJ found Dr. Raskas' medical source statement to be "not entirely persuasive" because it more than year old and was not "totally consistent" with his own evaluation. (Tr. 26) The ALJ also concluded that Dr. Raskas' opinion that Plaintiff was permanently and totally disabled was "neither persuasive or not persuasive because it is an issue that is reserved for the Commissioner." (Tr. 26)

Plaintiff asserts the ALJ erred in discrediting Dr. Raskas' opinion because the opinion was offered within the period of disability, and is consistent with Dr. Thompson's opinion as well as the objective evidence and clinical findings supporting Plaintiff's allegations of disabling pain and limitations. [ECF No. 27] The Commissioner counters that the ALJ properly discounted Dr. Raskas' opinion because statements that a claimant is totally disabled or not capable of work are not medical opinions under the regulations. [ECF No. 29]

Dr. Raskas' medical source statement was not a medical opinion under the regulations. "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions[.]" 20 C.F.R. §404.1513(a)(2). Opinions that a claimant is disabled are "inherently neither valuable nor persuasive" and the ALJ is not required to provide any analysis of his consideration of such evidence. 20 C.F.R. § 404.1520b(c), (c)(3)(i).  Thus, the ALJ did not err in finding Dr. Raskas' opinion to be unpersuasive.

    c.  <u>Dr. Barry Feinberg</u>

On November 9, 2021, Dr. Feinberg, one of Plaintiff's treating physicians, submitted a medical source statement that set forth Plaintiff's complaints regarding her pain, activities of daily

16

living, and physical limitations. (Tr. 1301-1302) Dr. Feinberg noted Plaintiff sat "right slumped[,]" had a non-antalgic and non-assisted gait, and had "no difficult with transfers." (Tr. 1302) Plaintiff had a positive straight leg raise examination, intact reflex motors sensory examination, "muscle weakness secondary to pain[,]" and positive provocation testing. (Tr. 1302) Dr. Feinberg observed no atrophy, hypertrophy, or hypersensitivity or allodynia but "significant myofascial findings throughout the thoracic spine between T5 to T7." (Tr. 1302) Plaintiff had positive Spurling's maneuver along the thoracic region, positive percussion thoracic spine, and spinal hyperextension with subluxation reproduced typical dorsal pain. (Tr. 1302) Dr. Feinberg observed forward head carriage and thoracic kyphosis. (Tr. 1302)

Dr. Feinberg concluded Plaintiff was "unable to perform a significant number of activities of daily living[,]" required consistent therapy and assistance with performing household activities, and was unable to maintain a prolonged position. (Tr. 1302) Dr. Feinberg stated Plaintiff was unable to lift more than 10 pounds or to sit more than 10 minutes without "constantly changing position." (Tr. 1302) Dr. Feinberg opined that Plaintiff was not able to obtain or maintain gainful employment due to her decreased capacity to function. (Tr. 1303).

The ALJ found Dr. Feinberg's opinion that Plaintiff was unable to perform a significant number of activities of daily living and that she had an inability to maintain a prolonged position was not persuasive because it was inconsistent with the objective medical evidence, Plaintiff's reported ability to travel, attend to her personal care, assist with her mother's care, sit for hours engaging in her online business, and take daily walks sometime for miles. (Tr. 27)  The ALJ also noted that Dr. Feinberg's opinion was rendered approximately 18 months after Plaintiff's date last insured and it was unclear whether these restrictions would have existed as of June 30, 2022.

17

Plaintiff argues the ALJ erred in finding Dr. Feinberg's opinion to be not persuasive because: (1) Plaintiff's ability to work "one (1) weekend, out of the more than five (5) years of medical records" does not support a finding that Plaintiff is capable of maintaining full time competitive work, and (2) Plaintiff's doctors prescribe walking as a therapy and the "ALJ failed to list any jobs that require, or allow, walking as therapy." [ECF No. 27]  Plaintiff further contends the ALJ erred in discounting Dr. Feinberg's opinion because it postdated the date last insured because "the ALJ never recognized that Plaintiff has permanent injuries and limitations, which span the entire period at issue."

First, the ALJ did not err in considering the timing of Dr. Feinberg's opinion in evaluating the persuasiveness of the opinion. While Dr. Feinberg set forth Plaintiff's medical history and noted that Plaintiff stated that she had the same self-reported exertional limitations "since her lumbar surgery in 2016[,]" Dr. Feinberg's opinion is dated November 9, 2021 and predominately reflects Plaintiff's condition as of that date.[6] (Tr.  1302) Thus, the ALJ's conclusion that it was "unclear" whether the stated restriction would have been present 18 months prior is supported by the contents of the opinion itself.

Further, the ALJ did not err in considering Plaintiff's reported ability to "sit for hours engaging in her on-line business" in assessing Dr. Feinberg's opinion regarding Plaintiff's functional limitations. As an initial matter, Plaintiff's assertion that she worked only one weekend over a five-year period is incorrect. Dr. Thompson's treatment notes reveal seven instances between June 2019 and February 2020 in which Plaintiff reported working on her computer or for her online business. (Tr.  1183, 1184, 1186, 1222, 1245, 1252) This includes spending between

---

[6] For example, Dr. Feinberg's opinion states, Plaintiff "is present today complaining of pain[,]" "patient is currently attending therapy[,]" and "patient's current ability to perform activities are markedly diminished[.]" (Tr.  1301-02)

one and three hours working or, in one instance, working 26 hours over a single weekend. (Tr. 1183, 1184, 1186, 1222, 1245, 1252) In assessing the persuasiveness of Dr. Feinberg's opinion, the ALJ considered not just Plaintiff's ability to work at her online business but all of Plaintiff's self-reported activities, including her travel, ability to attend to her personal care and assist her mother, and daily walks. (Tr. 27) The ALJ's finding that Plaintiff's self-reported functional limitations was inconsistent with her reported activities and that Dr. Feinberg's opinion was less persuasive due to his reliance on the Plaintiff's self-reports is supported by substantial evidence in the record.

Finally, Plaintiff argues the ALJ erred in finding Dr. Feinberg's opinion to be not persuasive because Plaintiff took daily walks, "sometimes for miles." (Tr. 27) Plaintiff contends her "doctors prescribe walking as therapy" and the "ALJ failed to list any jobs that require, or allow, walking as therapy." [ECF No. 27] Plaintiff does not cite to any authority supporting her contention that an ALJ errs in considering a Plaintiff's ability to engage in an activity simply because that activity is prescribed by doctors or otherwise therapeutic.

Here, Dr. Feinberg's opinion states that Plaintiff's pain increases with activity and prolonged positioning and, because she can only walk, sit or stand for approximately 10 minutes at a time, she must "constantly…change positions." (Tr. 1301) The medical records refute that Plaintiff is consistently unable to walk more than 10 minutes, in that Plaintiff's medical providers documented that Plaintiff takes daily walks and those walks frequently exceeded the alleged limitation. (Tr. 333, 344, 346, 370, 393, 396, 400, 1062, 1063, 1075, 1156, 1161, 1163, 1164, 1165, 1166, 1169) The fact that Plaintiff walked as a form of "therapy" does not negate the fact that her activity level exceeded her self-reported limitations. Furthermore, Dr. Feinberg's limitations with respect to Plaintiff's ability to sit and stand for 10 minutes or less were also

19

inconsistent with Dr. Thompson's progress notes reflecting that Plaintiff engaged in activities exceeding these limitations as well. (Tr. 1037, 1054, 1183, 1184, 1186, 1194, 1223, 1226, 1235, 1244, 1245, 1252) (Plaintiff reported sitting over periods of one to several hours while at baseball games, traveling, or while working on her computer) and (Tr. 1180, 1203, 1221) (Plaintiff reported standing more than 10 minutes, including once standing approximately 17 hours over a weekend while baking).

The Court finds the ALJ properly evaluated the persuasiveness of Dr. Feinberg's opinion by weighing the relevant factors and that the ALJ's determination that Dr. Feinberg's opinion was not persuasive is supported by substantial evidence.

## VI.  Conclusion

For the reasons discussed above, the Court finds that substantial evidence in the record as a whole supports the Commissioner's decision that Plaintiff is not disabled. Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying Social Security benefits to Plaintiff is **AFFIRMED**.

A separate judgment in accordance with this Memorandum and Order is entered this date.

*[Signature: Patricia L. Cohen]*

PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 4th day of March, 2024